## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAN NGUYEN, | : | CIVIL NO. 3:12-CV-177 |
| | : | |
| Petitioner, | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| ATTORNEY GENERAL, et al., | : | |
| | : | |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

This case involves a habeas corpus petition filed by Dan Nguyen, a native and citizen of Vietnam, and a previously convicted felon who was ordered removed from the United States in October of 2011.  Nguyen, who has remained in custody for approximately 5 months following the entry of this final removal order, has now filed a petition for writ of habeas corpus, seeking immediate release from immigration custody.  Because we find that Nguyen's current post-removal detention is specifically authorized by statute and falls well within the presumptively reasonable  6-month period prescribed by the United States Supreme in Zadvydas v. Davis, 533 U.S. 678 (2001), we believe–at present–that this continued detention is justified.  Accordingly, it is recommended that this petition be denied without prejudice.

## II.      Statement of Facts and of The Case

On September 15, 1999, Dan Nguyen, a native and citizen of Vietnam, entered the United States. (Doc. 7, Ex. A, Record of Deportable/Inadmissible Alien)  After marrying a United States citizen, Nguyen's immigration status was adjusted to a conditional resident spouse of a United States Citizen on November 13, 2003. (Id.) On November 29, 2005, Nguyen filed to have his status adjusted, requesting to remove the conditions on his residence claiming he was battered or "subject to extreme mental cruelty" by his wife. (Id., Ex. B, Decision by U.S. Citizenship and Immigration Services (USCIS).)  On March 23, 2006, Nguyen also joined the United States Navy, (Id.), and sought to become a citizen of the Unites States based on his joining the Navy. (Id.)

Ultimately, however, these applications were denied, and removal proceedings were commenced against Nguyen after Nguyen was found to have engaged in scheme to defraud the United States while serving in the Navy.  Specifically, while Nguyen was in the Navy, he applied for Basic Allowance for Housing (BAH), an allowance to military personnel to offset housing costs. (Id. Ex. A-B.)  On January 25, 2010, Nguyen was "arrested by the U.S. Naval Criminal Investigative Service in Washington, DC, and charged with the following felony offenses: Theft of Government Property, Conspiracy, False Claims, and False Statements." (Id.,Ex. B.)

On June 14, 2010, Nguyen was discharged from the Navy. (Id.)  On June 29, 2010, Nguyen was found guilty of theft of government property, in violation of Title 18 U.S.C. §§ 641 and 642, by the U.S. District Court, Eastern District of Virginia, and was sentenced to 15 months imprisonment. (Id., Ex. B; Ex. D, Judgment in a Criminal Case.)

Following Nguyen's conviction, on October 1, 2010, Immigration and Customs Enforcement (ICE), commenced administrative removal proceedings against Nguyen. (Id., Ex. A.)  A Notice of Intent to Issue a Final Administrative Removal Order was prepared and signed on October 1, 2010. (Id., Ex. E.)  The Notice charged that Nguyen was subject to deportation under "section 237(a)(2)(A)(111) of the Act, 8 U.S.C. 1227(a)(2)(A)(iii), as amended, because you have been convicted of an aggravated felony as defined in section 101(a)(43)(G) of the Act, 8 U.S.C. 1101(a)(43)(G)." (Id.) Nguyen was served with the Notice on July 12, 2011. (Id.)  For his part, Nguyen initially indicated that he wished to request withholding or deferral of removal to Vietnam. (Id.)

On December 29, 2010, Immigration officials issued a decision denying Nguyen's Application for Naturalization. (Id., Ex. B.)  That decision advised Nguyen that a "crime of Theft of Government Property for which you have been convicted is an aggravated felony as defined in Section 101(a)(43)(G) of the Act.  The conviction

of an aggravated felony precludes you from meeting the good moral character requirements for naturalization, at any time." (Id.  Ex. B.)   Therefore, it was determined that Nguyen's November 20, 2006, Application for Naturalization should be denied based on his providing false or misleading information to obtain an immigration benefit and his having been convicted of an aggravated felony. (Id.)

On August 1, 2011, a Final Administrative Removal Order was signed, Nguyen was found to be subject to removal, and he was ordered removed to Vietnam. (Id., Ex. F.)  Nguyen was served with the order on October 5, 2011. (Id.)   According to Nguyen, on October 18, 2011, he withdrew his request to apply for withholding and deferral or removal, making this removal order  administratively final. (Doc. 1)

Nguyen has remained detained since October of 2011 pending removal, and Nguyen indicates that he has had two custody status reviews from immigration officials while he has been detained awaiting removal from the United States. Dissatisfied with this continued detention, on January 31, 2012, Nguyen filed a petition for a writ of habeas corpus with the United States District Court for the Middle District of Pennsylvania, challenging his continued detention by the United States Immigration and Customs Enforcement ("ICE").  (Doc. 1)  This petition raises a single, narrow claim.  Relying upon the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001), Nguyen alleges that his current five-month post-removal

detention is excessive and unconstitutional. (Doc. 1)  The United States has filed a response to this petition (Doc. 7), which contends that Nguyen's current post-removal detention is mandated by law, and does not presently offend the due process limitations established by the Supreme Court in <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001).  This matter has been fully briefed by the parties, (Docs. 1, 7 and 8), and is now ripe for resolution.  For the reasons set forth below it is recommended that the petition be denied at this time since Nguyen's current post-removal detention is specifically authorized by statute and falls within the presumptively reasonable  6-month period prescribed by the United States Supreme Court in <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001).

### III.   <u>Discussion</u>

#### A.   <u>Nguyen's Post-Removal Detention Does Not Yet Raise Constitutional Concerns</u>

In this case, Nguyen's order of removal became final in October 2011, after Nguyen withdrew his desire to apply for withholding and deferral or removal.  As an alien under a final order of removal, Nguyen's detention is now governed by a set of statutory and constitutional rules.

First, by statute, aliens like Nguyen, who are subject to final removal orders, may be detained under 8 U.S.C. § 1231(a), which directs the Attorney General to remove such aliens within 90 days of the entry of a removal order. 8 U.S.C. §

1231(a)(1)(A).   The statute then commands that "[d]uring the removal period the Attorney General shall detain the alien", 8 U.S.C. § 1231(a)(2), and with respect to criminal aliens like Nguyen specifically provides that: "Under no circumstance during the removal period shall the Attorney General release an alien who has been found ...deportable under section 1227(a)(2) ... of this title." 8 U.S.C. § 1231(a)(2).   For purposes of our analysis of any post-final order period of detention, this statutory ninety-day "removal period" during which detention is mandatory begins on the date the order of removal becomes administratively final. See 8 U.S.C. § 1231(a)(1)(B)(I).

In this case, Nguyen has been held for approximately five months since his removal order became administratively final.   Of this brief period of detention, the initial 90 days of detention were not only authorized by law, they were actually compelled by the statute. 8 U.S.C. § 1231(a)(2).   As for Nguyen's remaining, current, brief term of post-removal detention, nothing about this on-going detention presently violates Nguyen's constitutional rights.

For aliens awaiting removal, like the Petitioner, the contours of those rights are now defined by the United States Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001).  In Zadvydas, the United States Supreme Court extended due process protections to aliens awaiting removal from the United States, while generally sustaining the validity of the initial mandatory detention period for such aliens during

the ninety-day removal period prescribed by 8 U.S.C. § 1231(a)(1)(A).  Beyond this

initial 90-day period the Court concluded that:  "we think it practically necessary to

recognize some presumptively reasonable  period of detention." Id. at 701.

The Court then observed that:

> While an argument can be made for confining any presumption to 90
> days, we doubt that when Congress shortened the removal period to 90
> days in 1996 it believed that all reasonably foreseeable removals could
> be accomplished in that time. We do have reason to believe, however,
> that Congress previously doubted the constitutionality of detention for
> more than six months . . . . Consequently, for the sake of uniform
> administration in the federal courts, we recognize that period. After this
> 6-month period, once the alien provides good reason to believe that there
> is no significant likelihood of removal in the reasonably foreseeable
> future, the Government must respond with evidence sufficient to rebut
> that showing. And for detention to remain reasonable, as the period of
> prior postremoval confinement grows, what counts as the "reasonably
> foreseeable future" conversely would have to shrink. This 6-month
> presumption, of course, does not mean that every alien not removed must
> be released after six months. To the contrary, an alien may be held in
> confinement until it has been determined that there is no significant
> likelihood of removal in the reasonably foreseeable future.

Id. at 701.

Taken together, 8 U.S.C. § 1231(a)(1)(A) and Zadvydas create a statutory and

constitutional framework for protecting the rights of aliens who are detained pursuant

to administratively final removal orders.  Under this framework, such aliens shall be

detained for the first 90 days of the removal period and further detention beyond this

90-day period will be presumed reasonable up to a period of 6 months, at which time

aliens subject to final removal orders must either be removed, or be given bail consideration.

However, when calculating these detention periods for purposes of analyzing post-removal delay claims brought by immigration detainees two principles must be kept in mind.   First, delays attributable to the recalcitrance of the immigration detainee, and his refusal to cooperate with immigration officials, are not to be considered by the courts in making these determinations regarding whether a detainee has experienced excessive delays in deportation.   Thus, where an alien refuses to cooperate with the authorities in affecting his removal he cannot cite the delay in removal which he caused as grounds for habeas relied.   As this Court has observed:

> [A]n "alien cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with the INS's efforts to remove him." Pelich v. I.N.S., 329 F.3d 1057, 1061 (9th Cir.2003). In [such] a case, the Court[s] determined that the continued detention of the alien was due to his own conduct: . . . Thus, the [court] has interpreted INA § 241(a)(1)(C) after Zadvydas to permit continued detention of a removable alien "so long as the alien fails to cooperate fully and honestly with officials to obtain travel documents." Lema v. INS, 341 F.3d 853, 857 (9th Cir.2003). Similarly, district courts to consider this issue ask whether the petitioner has the "keys to his freedom," Pelich, 329 F.3d at 1060, to determine whether he is preventing his own removal pursuant to INA § 241(a)(1)(C). See, e.g., Clark v. Ashcroft, No. 03-3320, 2003 WL 22351953 at *3-4 (E.D.Pa. Sept. 16, 2003)(alien initially misrepresented his country of origin, but later gave his true name and identity; the government showed no evidence of non-cooperation since that time); Rajigah v. Conway, 268 F.Supp.2d 159, 165-66 (E.D.N.Y.2003) (finding no bad faith failure to cooperate where alien made truthful statements to Guyanese ambassador regarding his intent to

file another court action, which the government considered failure to comply); Seretse-Khama v. Ashcroft, 215 F.Supp.2d 37, 51-53 (D.D.C.2002) (alien's truthful statements to Liberian officials that he did not wish to return to Liberia did not amount to bad faith failure to cooperate since it was not the reason for failure to issue travel documents; rather, it was their concern for his lack of ties to that country); Powell v. Ashcroft, 194 F.Supp.2d 209, 210 (E.D.N.Y.2002) (repeated inconsistencies regarding alien's identity "demonstrably hampered the INS in carrying out his removal"). Thus, this Court must carefully examine the record to determine Petitioner's part in his continued detention.

Abdel-Muhti v. Ashcroft,  314 F.Supp.2d 418, 427-28 (M.D.Pa.,2004)

In addition, cases construing Zadvydas recognize that the presumptively reasonable six-month detention period described by the Supreme Court is just that–a presumptively reasonable period of detention.  It is not an ironclad time frame within which aliens must be removed, or released.  Moreover, echoing the Supreme Court's observation that "[t]his 6-month presumption, of course, does not mean that every alien not removed must be released after six months," id. at 701, courts have concluded that an alien who has been held longer than six months awaiting removal still bears an initial burden of proof to secure release pending removal.  In such instances, "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir.

2002). <u>See, e.g.</u>, <u>Rodney v. Mukasey</u>, 340 F. App'x 761, 764 (3d Cir. 2009);

<u>Encarnacion-Mendez v. Attorney General</u>, 176 F. App'x 251, 254 (3d Cir. 2006);

<u>Joseph v. United States</u>, 127 F. App'x 79, 81 (3d Cir. 2005).

In instances where an alien is unable to produce evidence demonstrating good cause to believe that there is no significant likelihood of removal in the reasonably foreseeable future, courts have frequently sustained continuing periods of detention pending removal well beyond the six-month time frame described as presumptively reasonable by the Supreme Court in <u>Zadvydas</u>, reasoning consistent with <u>Zadvydas</u> that: "[t]his 6-month presumption, . . ., does not mean that every alien not removed must be released after six months.   To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." <u>Zadvydas</u>, 533 U.S. at 701.  <u>See, e.g.</u>, <u>Joseph v. United States</u>, 127 F. App'x 79 (3d Cir. 2005) (11 months); <u>Sun v. Holder</u>, No. 10-2186, 2010 WL 5391279 (M.D. Pa. Dec. 22, 2010)(10 months);  <u>Joseph v. Lowe</u>, No. 10-1222, 2010 WL 3835872 (M.D. Pa. Sept. 24, 2010) (10 months); <u>Boyce v. Holder</u>, 09-2254, 2010 WL 817482 (M.D. Pa. March 9, 2010)(18 months); <u>Robinson v. District Director</u>, No. 09-637, 2009 WL 3366439 (M.D. Pa. Oct. 19, 2009) (1 year); <u>Brown v. Attorney General</u>, No. 09-313, 2009 WL 2225431 (M.D. Pa. July 23, 2009) (10 months); <u>Aishrat v. Mukasey</u>, No. 08-786, 2008 WL 3071003

(M.D. Pa. Aug. 1, 2008) (10 months); <u>Cyril v. Bureau of Immigration and Customs Enforcement</u>, No. 05-2658, 2006 WL 1313857 (M.D. Pa. May 11, 2006) (10 months); <u>Nma v. Ridge</u>, 286 F.Supp.2d 469 (E.D.Pa. 2003)(11 months).

While this legal framework affords substantial protections to aliens, like Nguyen, who are subject to final removal orders, application of these legal standards to this case provides no grounds for affording habeas relief to the Petitioner at this time. Nguyen's removal order became final in October 2011. Thereafter, he was subject to the first 90-day mandatory detention period set by statute, 8 U.S.C. § 1231(a)(2), and his post-removal detention falls well within the 6-month presumptively reasonable time frame defined by the Supreme Court in <u>Zadvydas</u>.

On these facts we find that Nguyen simply has not made a valid claim that he has been subjected to an unconstitutionally excessive period of post-removal delay. Indeed, far from being unconstitutionally excessive, the current post-removal detention falls within periods sanctioned by statute and by the Supreme Court. Therefore, this brief detention does not raise concerns of constitutional dimension warranting habeas relief at this time. See <u>Hendricks v. Reno</u>, 221 F. App'x 131 (3d Cir. 2007)(affirming denial of habeas petition where court found delay from date of administratively final deportation order was less than 3 months).

While we reach this view regarding the current lawfulness of Nguyen's detention, we also recognize Nguyen's concerns that removal to his homeland of Vietnam may be difficult and time-consuming, and may result in substantial additional delay and detention.  While we find that Nguyen has not presently carried his burden of proof under <u>Zadvydas</u>, justifying habeas corpus relief at this time, we remain mindful of the Supreme Court's admonition that "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink". <u>Zadvydas</u>, 533 U.S. at 701.  In this regard, this Court's prior observation is particularly apt:

> Of course, "for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." <u>Zadvydas</u>, 533 U.S. at 701, 121 S.Ct. at 2505. Thus, if time passes with no progress on removal, [the Petitioner] may file a new 2241 petition challenging his continued detention. We believe it would not be unreasonable for him to file another petition after four more months. Alternatively, he may file sooner if specific events occur indicating he would not be removed in the reasonably foreseeable future. We add, however, that we express no opinion on whether such a motion would succeed in either circumstance.

<u>Aishrat v. Mukasey</u>, No. 08-786, 2008 WL 3071003, *2 (M.D.Pa. Aug.1, 2008). Accordingly, immigration officials must remain alert to their legal responsibility to ensure Nguyen's prompt removal from the United States, and strive to expedite his return to his homeland.  While we urge Respondents to keep these requirements of the law in mind, at present, we find that Nguyen's detention still falls within a

presumptively reasonable time-frame, and Nguyen has not carried his burden of proving that he will not be removed in the foreseeable future. Therefore, Nguyen has not yet shown that his continued detention has become unreasonable in its duration. Therefore, this petition should be denied without prejudice to renewal of these claims at such time, if any, when the duration of this detention becomes unreasonably prolonged.

## IV.   **Recommendation**

For the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus,   IT IS RECOMMENDED that the Petition be DENIED without prejudice to renewal at such time, if any, that the delay and detention may become unreasonable and excessive.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only

in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 20th day of March 2012.

 *S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge